The opinion of the court was delivered by
Manning, C. J.
This is an action of partition. Louisa Kleinman, the defendant, had for her first husband Charles Gelbke, and -for her second, Caspar Weisz. This second marriage took place in June 1854-Two improved lots in Gretna were bought by Mrs. Weisz in October 1856, the price being seven hundred dollars, and the title thereto being *125 taken in her name, and reciting that the money was paid out of her paraphernal and separate fund. Her husband joined in the act, authorizing her to buy and sign.
In April 1877 she sued her husband for a divorce, alleging cruel treatment, and for a settlement of the community, alleging that the two lots bought as above stated were her paraphernal property, and prayed that the house upon them be assigned as her residence pending the suit. She obtained her decree of divorce Dec. 8, 1877. On the 15th. of that month she bought other lots and paid four hundred and seventy-five dollars for them.
Caspar Weisz died in 1878, having made a last will in March of that year, of which he appointed Philip Drumm executor, and by which he devised and bequeathed to his nephew John Kretz and his stepson Louis Gelbke all of his property. There were no children of his marriage with defendant. There were four children of her marriage with Gelbke, and one of them is one of the devisees under the will. The plaintiffs in this suit are the son of the defendant, and Kretz, who claim us universal legatees and instituted heirs, and Drumm the executor. Their claim is that this property, bought by the defendant as already detailed, is a part of the community, and they pray its partition. The defendant denies that this property is community — claims it as paraphernal — and alleges that her separate funds, derived from her occupation of public merchant, were used by Caspar Weisz for the purchase of whatever property he had, and prays a sale of all the property inventoried, except that claimed as paraphernal, to re-imburse her.
During the first marriage with Gelbke, the defendant kept a grog-shop, her husband pursuing his occupation of barber. Both of them appear to have been industrious and thrifty. They maintained themselves and their family, which rapidly increased to four children, and at Gelbke’s death, there was some property. The widow bemoaned her loss, wringing her hands, and “ crying and wondering what she should do,” and the plaintiffs interpret that wail of distress as an admission that she had nothing to live on or to support her children. Far from it. It was but the natural and spontaneous expression of her sense of present loneliness in the first moments of widowhood. She recovered from it, and married again in less than a year. Shortly after this second marriage the business which she had been carrying on was enlarged. Weisz, the second husband, was the driver of a milk cart at twenty dollars a month for wages. It is said he had saved six hundred dollars, •and on his marriage with the defendant, he quitted his former occupation, and came to live with her. The plaintiffs’ theory is that his six hundred dollars was the foundation of all future acquisitions, and that .it was his judgment and attention to business that opened a wider field, *126 wherein was afterwards reaped the fruits that form the subject oí' contestation now.
Of course that, or the opposite conclusion, is to be reached only by a careful survey of all the evidence. We shall not recapitulate it. There-are salient facts developed in it that satisfy us that the statement made in the deed of 1856, that the property then bought was paid for by the-wife out of her separate estate, is the truth.
All the purchases for her grocery were made by her. She was the-active manager of her business, and gave personal attention to its conduct. It increased and became profitable. Those who sold to her received payment from her, and knew only her in the business. If Caspar Weisz had been the real owner of the grocery, or the furnisher of its stock, and the manager of its affairs, we should hear more of him from those who dealt with the store — from those who sold to the-grocery as well as those who bought from it. She had money. Her savings increased rapidly. There is nothing improbable in her having-seven hundred dollars, the profits of her business, with which to buy property. She bought another piece of property during the year the-divorce suit was pending, and a few days after its termination, and paid for it. The husband signed the deed of 1856 conveying the property to-her, in which was recited the fact that the money was hers.
Can the present plaintiffs gainsay this declaration in the deed, to which the husband had put his hand ? If they were creditors or forced heirs of the testator, there is no doubt they could. Were it otherwise, collusive declarations made by parties to an authentic act would conclude those whose interests are affected by them. But these plaintiffs are neither creditors nor forced heirs. One is the mere executor of the will with no substantial interest in the question. The other two are simply subjects of gratuitous bounty, who have no claim to any of the testator’s property except that derived from the will. They stand in his shoes. They are bound by his acts and by his words. They cannot claim as his that which he declared or admitted was another’s. Hebert v. Sage, 29 Annual, 511. Stewart v. Mix, 30 Annual, 1036.
The conjecture of the plaintiffs is that he submitted to having the deed taken in the name of his wife because he had been indicted for selling liquor illegally. There is proof, satisfactory to us, that the purchase price of the property bought at the first sale, was the wife’s. The second purchase was after the institution of her suit for divorce and separation of property, and the plaintiffs have no claim upon it, and so-the lower court adjudged. But the first purchase was erroneously decreed to belong to the community.
We can deal with only a part of the case now. The claim of the defendant for a sale of the property of the testator, and a re-imburse *127 ment of alleged paraphernal funds out of the proceeds, must be adjudicated below. The rights of the defendant in all matters, not embraced in our decree, are reserved.
It is ordered, adjudged, and decreed that the judgment of the lower court is avoided and reversed, and that the property conveyed to the defendant by deeds of October 21 1856 and December 15,1877 is decreed to be her individual and separate propeity, and not liable to be partitioned as a part of the succession of Caspar Weisz — that the rights of the defendant in all other matters set up in this suit are reserved — and that the cause be remanded for further proceedings according to law, the plaintiffs paying costs of appeal.